# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | | |
|---|---|---|
| **JOHNNY R. BROOKS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:11-cv-01252-SI |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Merrill Schneider, Schneider Caver Law Offices, P.O. Box 14490, Portland, OR 97239.
Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue,
Suite 600, Portland, OR 97204-2902; Jeffery R. McClain, Special Assistant United States
Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue,
Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**SIMON, District Judge.**

Mr. Johnny R. Brooks seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits. Because Mr. Brooks meets the requirements for disability at step three, the Commissioner's decision is reversed and this case is remanded for the immediate payment of benefits pursuant to 42 U.S.C. § 405(g), sentence four.

## I. BACKGROUND

### A. The Application

Mr. Brooks protectively filed an application for Disability Insurance Benefits ("DIB") on October 17, 2005, alleging disability beginning on May 1, 1984. Tr. 190, 317. He alleges disability due to orthopedic problems in his back, left leg, and hip, as well as damage to his left shoulder and right rotator cuff, and high blood pressure. Tr. 342. The Commissioner denied his application initially and upon reconsideration; thereafter, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 185–86, 202–04, 208. After an administrative hearing, held November 13, 2007, ALJ Haack found Mr. Brooks to be not disabled. Tr. 147–84, 198. Thereafter, the Appeals Council granted Mr. Brooks' request for review and remanded the case to an ALJ. Tr. 199–201.

On remand, ALJ Lazuran held a second administrative hearing on August 25, 2010, and a supplemental hearing on December 2, 2010. Tr. 39–104, 107–46. After the hearings, the ALJ found Mr. Brooks to be not disabled. Tr. 33. The Appeals Council denied Mr. Brooks' request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. Mr. Brooks now seeks judicial review of that decision.

**B.      The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

> 1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

> 2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

> 3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment

of work-related activities that the claimant may still perform on a regular
and continuing basis, despite any limitations imposed by his or her
impairments. 20 C.F.R. § 404.1520(e). After the ALJ determines the
claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC
assessment? If so, then the claimant is not disabled. 20 C.F.R.
§ 404.1520(a)(4)(iv). If the claimant cannot perform his or her past
relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience,
is the claimant able to make an adjustment to other work that exists in
significant numbers in the national economy? If so, then the claimant is
not disabled. § 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot
perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four.  *Id.* at 953; *see also*

*Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing

"work which exists in the national economy"). If the Commissioner fails to meet this burden, the

claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that

the claimant is able to perform other work existing in significant numbers in the national

economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953–54; *Tackett*, 180 F.3d

at 1099.

## C.     The ALJ's Decision

The ALJ applied the sequential process in her February 25, 2011 decision. Tr. 21–38. At

step one, the ALJ found that Mr. Brooks had not engaged in substantial gainful activity between

OPINION AND ORDER, Page 4

his alleged onset date, May 1, 1984, and his date last insured, December 31, 1987. Tr. 23. At step two, the ALJ found that, through his date last insured, Mr. Brooks' history of left tibia and fibula fracture, history of left shoulder injury, depressive disorder, pain disorder, history of psychotic episodes, and borderline intellectual functioning were severe impairments. *Id.* At step three, the ALJ found that Mr. Brooks did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 24.

The ALJ then determined that Mr. Brooks had the RFC, through his date last insured, to perform light work with the following additional restrictions: a sit or stand option; a cane for walking long distances or over uneven ground; rarely crouching, crawling, stooping, or climbing; and avoidance of concentrated exposure to hazards. Tr. 26. Further, Mr. Brooks was restricted to simple, repetitive tasks in a predictable work setting, occasional contact with his co-workers, and no work with the public. *Id.* In reaching this conclusion, the ALJ considered Mr. Brooks' statements, but found that they were not fully credible. Tr. 27. In addition, the ALJ examined the lay testimony of Ms. Sara Isaac and Ms. Eulah Brooks, but found that they were not credible. Tr. 30–31. The ALJ gave significant weight to the opinion of Dr. Armistead, who examined Mr. Brooks during the relevant period. Tr. 29.

At step four, the ALJ found that Mr. Brooks was unable to perform his past relevant work through his date last insured. Tr. 31. Therefore, the ALJ called a vocational expert ("VE") to testify at the hearing. Tr. 93–103. The ALJ asked the VE to consider a hypothetical claimant with restrictions similar to those formulated in Mr. Brooks' RFC; the VE responded that a person with those restrictions would be able to perform the work of a production assembler and an electronics assembler. Tr. 32–33.

Based on the VE's testimony, the ALJ found that Mr. Brooks was capable of performing "jobs that exist in significant numbers in the national economy" through his date last insured. Tr. 32. The ALJ therefore concluded that Mr. Brooks was not disabled from May 1, 1984, through December 31, 1987. Tr. 33.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon

which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226–26

(citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

### III.    DISCUSSION

Mr. Brooks argues that the ALJ erred by: (1) finding that he did not meet the

requirements of Listing 12.05C; (2) finding his testimony not credible; and (3) improperly

rejecting the opinion of a treating physician, Dr. L'Herisson. In light of the Court's ruling on the

first issue, it is unnecessary to address the second and third issues.

### A.    Listing 12.05C

Mr. Brooks argues that the ALJ erred by concluding that he did not meet the

requirements of Listing 12.05C during the relevant period.[1] Pl.'s Br. at 5–8. An irrebuttable

presumption of disability arises if a claimant establishes that he or she meets or equals the

requirements of a listed condition found at 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20

C.F.R. § 404.1520(a)(4)(iii); *see also Sullivan v. Zebley,* 493 U.S. 521, 532 (1990) ("[T]he

listings were designed to operate as a presumption of disability that makes further inquiry

unnecessary."). The introduction to the listing describing mental impairments states:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for
> mental retardation. It also contains four sets of criteria (paragraphs A through D). If your
> impairment satisfies the diagnostic description in the introductory paragraph and any one
> of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00. The diagnostic description for mental retardation

requires:

---

[1] The relevant period spans May 1, 1984, Mr. Brooks' alleged onset date, and December
31, 1987, his date last insured. Tr. 23.

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

*Id.* at § 12.05. To meet the C criteria, and thus be found disabled at step three, the claimant must also have, "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* at § 12.05C.

Mr. Brooks presented the results of two intelligence quotient ("IQ") tests, obtained when he was 47 and 50 years of age. Tr. 456 (January 6, 2006); Tr. 489 (August 12, 2008). In 2006, Dr. Wendi Adams administered the Wechsler Adult Intelligence Scale III ("WAIS-III") and Mr. Brooks received a verbal IQ score of 61, a performance IQ score of 60, and a full scale IQ score of 58. Tr. 456. In 2008, Dr. Elaine Greif administered the same test and Mr. Brooks received a verbal IQ score of 67, a performance IQ score of 72, and a full scale IQ score of 66. Tr. 491. At the hearing, the medical expert, Dr. Margaret Moore, testified that the results of both tests were valid. Tr. 25, 116–18. In addition, Mr. Brooks offered a transcript from his high school, which demonstrated that he failed most, if not all, of the classes for which he registered. Tr. 410.

After considering the record and the testimony of Dr. Moore, the ALJ concluded that Mr. Brooks did not meet the C criteria of Listing 12.05. Tr. 25–26. Agreeing with the testimony of Dr. Moore, the ALJ concluded that the recordation of Mr. Brooks' cognitive impairments in 2006 and 2008 did not establish his limited functioning during the disability period. *Id.* Further, the ALJ rejected using Mr. Brooks' transcript as substitute evidence because the "records did not include standardized test results or explain the basis for the low grades." Tr. 26.

OPINION AND ORDER, Page 8

As stated above, in order to meet Listing 12.05C, Mr. Brooks must establish:
"(1) significantly subaverage general intellectual functioning with deficits in adaptive
functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to
70; and (3) a physical or other mental impairment imposing an additional and significant work-
related limitation of function." *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011) (citing
20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05C); *see also Brooks v. Barnhart*, 167 F. App'x 598,
599–600 (9th Cir. 2006) (citations omitted) (listing the same elements).

The Commissioner argues that "a diagnosis of mental retardation is a prerequisite to
meeting . . . Listing 12.05, regardless of the . . . IQ scores." Def.'s Resp. at 7. The introduction to
the mental disorders section of the listings, however, belies this argument. To meet Listing
12.05C, the claimant must only "satisfy[] the diagnostic description in the introductory
paragraph" in addition to the C criteria. 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.00. Thus, by the
plain language of the regulations, Mr. Brooks may meet the listing without a formal diagnosis of
mental retardation. *See Pedro*, 849 F. Supp. 2d at 1010 (citations omitted); *accord Maresh v.
Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (finding that a formal diagnosis of mental
retardation is not required). [2]

---

[2] Thus, contrary to the Commissioner's argument, the formal diagnosis of borderline intellect given by Dr. Greif is immaterial. *See Knarr v. Astrue*, 3:11-CV-041-BR, 2012 WL 1194319, at *7 (D. Or. Apr. 9, 2012) (claimant satisfied the diagnostic description of the listing, despite a formal diagnosis of "borderline intellectual functioning"). Further, Dr. Adams offered a "rule out diagnosis" of mental retardation, which indicates that Mr. Brooks met the diagnostic criteria for the condition, but the doctor wanted independent confirmation of Mr. Brooks' limited adaptive functioning. Tr. 458.

1.      **Onset Prior to Age 22**

Mr. Brooks argues that the results of the IQ tests taken in 2006 and 2008, in concert with evidence of his grades from high school, establish that his neurological impairment manifested during his developmental period. Pl.'s Br. at 6–8. In response, the Commissioner argues that the lack of formal testing during the relevant period and the observations of two physicians counsel otherwise. Def.'s Resp. at 7–10. Further, the Commissioner argues that the IQ tests taken by Mr. Brooks as an adult are not relevant to cognitive limitations that must have arisen before the age of 22. *Id.*

Although the Ninth Circuit has never addressed this issue, other circuits and district courts within the Ninth Circuit have presumed that a valid adult IQ score is evidence that the impairment existed during the claimant's developmental period. *See, e.g.*, *Maresh*, 438 F.3d at 900 ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.") (quotations and citations omitted); *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) ("IQ's remain fairly constant throughout life"); *Luckey v. U.S. Dep't. of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989); *Pedro*, 849 F. Supp. 2d at 1010; *Forsythe v. Astrue*, 1:10-CV-01515 AWI, 2012 WL 217751, at *6–7 (E.D. Cal. Jan. 24, 2012); *Rhein v. Astrue*, 1:09-CV-01754-JLT, 2010 WL 4877796, at *7 (E.D. Cal. Nov. 23, 2010). Some courts have adopted a *per se* rebuttable presumption of impairment during the developmental period when the claimant has presented evidence of a valid IQ score of 60 to 70. *See, e.g.*, *Hodges*, 276 F.3d at 1268–69 (allowing the Commissioner to present contrary evidence on remand). Other courts, however, require the claimant to produce additional evidence that supports the finding of onset during the developmental period. *See, e.g.*,

*Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003) (requiring additional evidence "that is at least consistent with" onset before the age of 22).

This Court, joining other judges in this District, is persuaded that a valid adult IQ score can be reflective of an impairment that manifested during the claimant's developmental period. *See, e.g.*, *Canales v. Astrue*, 3:10-CV-1200-HZ, 2011 WL 4704228, at *6–7 (D. Or. Oct. 4, 2011); *Pedro*, 849 F. Supp. 2d at 1011–12. Moreover, the language of the Listing supports the use of circumstantial evidence, acquired after the end of a claimant's developmental period, to satisfy the diagnostic requirements of the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05 ("[T]he evidence demonstrates *or supports* onset of the impairment before age 22.") (emphasis added). Indeed, in revising the language of Listing 12.05, the Social Security Administration commented:

> The final rules clarify that *we do not necessarily require evidence from the developmental period* to establish that the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began. This is not a change in interpretation from the prior rules.

*Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,* 65 Fed. Reg. 50746-01, 50753 (Aug. 21, 2000) (emphasis added).

Even under the more exacting standard articulated by some courts, there is substantial evidence in the record, in addition to the IQ tests, to support a finding that Mr. Brooks' cognitive impairment manifested during the developmental period. For example, Mr. Brooks attended three years of special education classes prior to high school, where he had substantial academic difficulty. *E.g.* Tr. 44–45, 410 (receiving a grade of F for each class he was registered for). Indeed, courts have found similar circumstantial evidence satisfies the requirement. *See, e.g.*, *Pedro*, 849 F. Supp. 2d at 1012 (claimant was in special education classes, but graduated from

OPINION AND ORDER, Page 11

high school and can read the newspaper, but otherwise struggles with reading and writing);

*Forsythe*, 2012 WL 217751, at *7 (claimant attended special education classes, was held back in

first grade, and performed poorly in math and reading); *Canales*, 2011 WL 4704228, at *6

(claimant "cycled in and out of special education classes" and "occasionally obtain[ed] a passing

grade, or better," but failed the majority of his classes).[3] Moreover, the medical expert testified

that Mr. Brooks' test results indicated a "lifelong cognitive impairment." Tr. 121.

The Commissioner argues that Dr. Armistead, who examined Mr. Brooks in 1987, and

Dr. L'Herisson, who treated Mr. Brooks from 1986 through 1987, did not find any evidence of

limited functioning. Def.'s Br. at 7–8. The Court notes that these observations occurred during

Mr. Brooks' late twenties, not during his developmental period. Dr. Armistead noted that

Mr. Brooks "appears to be of average intelligence," and Dr. L'Herisson noted he was

"intellectually within normal limits." Tr. 571, 577. These observations are not supported by

formal, or even informal, intelligence testing. They are, however, accompanied by observations

concerning Mr. Brooks' activities of daily living and social functioning. *See* 20 C.F.R. Pt. 404,

Subpt. P, app. 1 § 15.00D(6)(e) (In the absence of formal testing, "the best indicator of severity

is often . . . how you perform activities of daily living and social functioning.").

Contemporaneous with the doctors' observations about Mr. Brooks' intelligence, they also noted

---

[3] Some courts have suggested that the claimant additionally must prove that there were no intervening circumstances between the age of 22 and the date of the IQ test that might account for their limited intellectual functioning. *See, e.g.*, *Rhein*, 2010 WL 4877796, at *8 (citing *Markle*, 324 F.3d at 189) ("Plaintiff is required to provide evidence supporting [the] early onset of the mental impairment *and* that no intervening circumstances have occurred to impact Plaintiff's IQ."). Here, while Mr. Brooks has a history of motorcycle and automobile accidents, there is no evidence in the record suggesting that he suffered diminished intelligence as a result of those accidents. *See, e.g.*, Tr. 571 (accidents in 1978 and 1981 resulted in a fractured shoulder and a fractured tibia, respectively); Tr. 572 (concluding that Mr. Brooks' psychosis presented "after the truck accident which would make it of reactive type").

his lack of socialization, confused thought process, and lack of effort. *See, e.g.*, Tr. 571–73, 577.

Thus, the notes of Drs. Armistead and L'Herisson do not contradict the other evidence offered by

Mr. Brooks.

While Mr. Brooks' 2006 and 2008 test scores are competent evidence demonstrating

"subaverage general intellectual functioning" during the developmental period, he must also

establish that he had "deficits in adaptive functioning" during that same period. *See* 20 C.F.R.

Pt. 404, Subpt. P, app. 1 § 12.05.

"The Diagnostic & Statistical Manual of Mental Disorders describes 'adaptive

functioning' as 'how effectively individuals cope with common life demands and how well they

meet the standards of personal independence expected of someone in their particular age group,

socioeconomic background, and community setting. . . . Problems in adaption are more likely to

improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable

attribute.'" *Pedro*, 849 F. Supp. 2d at 1011 (quoting *American Psychiatric Ass'n Diagnostic &*

*Statistical Manual of Mental Disorders* 42 (4th ed. 2000, text revision) (hereinafter *DSM-IV*)).

Further, the DSM-IV's diagnostic criteria for mental retardation specifically requires

"impairments in adaptive functioning . . . in at least two of the following areas: communication,

self-care, home living, social/interpersonal skills, use of community resources, self-direction,

functional academic skills, work, leisure, health, and safety." *DSM-IV*, at 49. As with intellectual

functioning, "[a] claimant may use circumstantial evidence to demonstrate adaptive functioning

deficits, such as 'attendance in special education classes, dropping out of high school prior to

graduation, difficulties in reading, writing or math, and low skilled work history.'" *Pedro*, 849 F.

Supp. 2d at 1011–12 (quoting *Campbell v. Astrue*, No. 1:09–CV–00465GSA, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011)).

The record contains ample circumstantial evidence demonstrating that Mr. Brooks had deficits in adaptive functioning before the age of 22. Most strikingly, Mr. Brooks' high school transcript indicates that he twice failed English and general science, and additionally failed reading, world geography, social studies, and general mathematics. Tr. 410. Moreover, Mr. Brooks testified that he was placed in special education classes for three years before high school, but, despite the additional assistance, he is only able to read and write "a little."[4] Tr. 45. After leaving high school, Mr. Brooks twice unsuccessfully attempted to obtain his GED. Tr. 44.

From the ages of 17 through 24, Mr. Brooks was employed as a dump truck driver, which the VE classified as unskilled.[5] Tr. 50, 181. Although Mr. Brooks had a "common law wife," which might indicate some level of social functioning, in 1987, he reported that his "thoughts [were] messed up" and he required her support. Tr. 576. Dr. Moore, the medical expert, testified that the evidence demonstrated that Mr. Brooks, during the relevant period, showed a mild to moderate social impairment and a marked limitation in concentration, persistence, and pace. Tr. 123–24. Significantly, Dr. Moore testified that Mr. Brooks' functioning "reflects a lifelong cognitive impairment," and "this is what he was likely capable of pretty much all along." Tr. 121.

---

[4] This evidence is corroborated by observations made by the physicians administering his two IQ tests. Tr. 455 (when asked to write a sentence, Mr. Brooks wrote "bird in net", without any punctuation); Tr. 488 (The physician noted Mr. Brooks was "sounding out words and processing slowly until grasping the statements.").

[5] Although Mr. Brooks also testified that he assisted a mechanic at the same company, his description of the position is not inconsistent with his alleged defects in adaptive functioning. Tr. 155 (the mechanic "would take and show me what to take off . . . and I would use the wrench to tighten it up").

OPINION AND ORDER, Page 14

Examining the record as a whole, the Court concludes that Mr. Brooks has demonstrated "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Pt. 404, Subpt. P, app. 1§ 15.05. Further, Mr. Brooks has offered sufficient evidence demonstrating that those limitations manifested prior to the age of 22. *Id.* Thus, it was error for the ALJ to fail to consider whether or not Mr. Brooks met the diagnostic criteria of Listing 12.05.

### 2.    Valid IQ Scores

The first component of the C criteria for Listing 12.05 is that the claimant has "[a] valid verbal, performance, or full scale IQ of 60 through 70." *See* 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05C. Although the ALJ accepted the medical expert's testimony that the IQ scores were valid, she concluded that Mr. Brooks did not meet the C criteria because "there was no evidence of such limited functioning from 1984–87." Tr. 25–26. The Commissioner does not challenge the scores' validity.[6]

In 2006, Dr. Adams that found Mr. Brooks had a verbal IQ score of 61, a performance IQ score of 60, and a full scale IQ score of 58. Tr. 456. Dr. Adams stated the tests "can be considered an accurate reflection of [Mr. Brooks'] general abilities in the areas tested." Tr. 455. In 2008, Dr. Greif found that Mr. Brooks had a verbal IQ score of 67, a performance IQ score of 72, and a full scale IQ score of 66. Tr. 491. Dr. Greif stated "Mr. Brooks performed well . . . [and the] [t]ests were judged, therefore, to reflect accurately his current abilities." Tr. 489. Moreover,

---

[6] The Court notes that the ALJ did not cite to any evidence from the relevant time period when discussing Listing 12.05. *See* Tr. 25. Although the ALJ cited to the treatment notes offered by Drs. L'Herisson and Armistead, she did so in reference to the general B criteria, which is inapplicable to Listing 12.05. *Id.* Because the ALJ did not rely on that evidence to that find Mr. Brooks did not meet Listing 12.05C, the Court may not affirm using that evidence. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (citing *SEC*, 332 U.S. at 196 (1947)). Additionally, as discussed above, the doctors noted defects in Mr. Brooks' adaptive functioning that are consistent with the listing. *See supra* p. 12.

Dr. Moore, the medical expert, reviewed the two scores and considered the tests and scores valid. Tr. 25, 116–18.

The reasoning the Court relied upon above is equally persuasive here. *See supra* pp. 9–15. Mr. Brooks has produced substantial circumstantial evidence demonstrating that he was cognitively limited during his developmental period, which would be before 1980. *Id.* Indeed, the medical expert testified that Mr. Brooks' test results were indicative of a "lifelong cognitive impairment." Tr. 121. Moreover, similar evidence has been accepted as substantial by other courts considering the issue. *See, e.g.*, *Forsythe*, 2012 WL 217751, at *7–8 (considering similar evidence of early onset to satisfy the diagnostic criteria and the first requirement of criteria C); *Rhein*, 2010WL 4877796, at *8–9 (same); *see also Pedro*, 849 F. Supp. 2d at 1014–15 (only requiring valid IQ scores to satisfy the requirement).

Thus, it was error for the ALJ to conclude that Mr. Brooks' IQ tests, particularly in combination with the other evidence in the record, were insufficient to establish the first component of the C criteria for Listing 12.05.

### 3.    An Additional Impairment[7]

The second component of the C criteria for Listing 12.05 requires that the claimant have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, app. 1 § 12.05C. This requirement is satisfied when an additional impairment's "effect on a claimant's ability to perform basic work

---

[7] Dr. Adams concluded that Mr. Brooks had a full scale IQ score of 58. Tr. 456. The regulations provide that "[i]n cases where more than one IQ is customarily derived from the test administered . . . we use the *lowest* of these in conjunction with [Listing] 12.05." 20 C.F.R. Pt. 404, Subpt. P., app. 1§ 12.00D(6)(c) (emphasis added). Thus, Mr. Brooks has also satisfied the requirements of Listing 12.05B, which requires "[a] valid verbal, performance, or full scale IQ of 59 or less." *Id.* at § 12.05B.

activities is more than slight or minimal." *Fanning v. Bowen,* 827 F.2d 631, 633 (9th Cir. 1987) (citations omitted). If the claimant has another severe impairment at step two, then the requirement is satisfied. *See id.* at 633 n.3 (citing *Nieves v. Sec'y of Health & Human Servs.*, 775 F.2d 12, 14 (1st Cir. 1985)); *see also Pedro*, 849 F. Supp. 2d at 1015 (citing *Stokes v. Astrue*, No. 09–1264–PK, 2011 WL 285224, at *10 (D. Or. Jan. 11, 2011), *adopted by* 2011 WL 284433 (D. Or. Jan. 24, 2011)) ("Cases interpreting *Fanning* and the . . . regulations conclude that if an ALJ finds an impairment to be 'severe' at step two of the disability analysis," then the requirement is satisfied.).

In addition to borderline intellectual functioning, the ALJ found that Mr. Brooks had five other severe impairments during the relevant period: "a history of left tibia and fibula fracture; a history of left shoulder injury; a depressive disorder; a pain disorder; and a history of psychotic episodes." Tr. 23. Any of these severe impairments satisfy the final component of the C criteria for Listing 12.05. *See Pedro*, 849 F. Supp. 2d at 1015. Thus, the Court concludes that there is substantial evidence in the record to find that Mr. Brooks suffered from "an additional and significant work related limitation of function." *Fanning*, 827 F.2d at 633.

In sum, the Court concludes that the ALJ's determination that Mr. Brooks did not satisfy the requirements of Listing 12.05C was not based on substantial evidence. Therefore, the ALJ's finding of non-disability at step three of the sequential disability analysis is reversed.

**B.    Remedy**

The court may, in its discretion, order an immediate payment of benefits. In "Social Security Act cases Congress has granted district courts the additional power to reverse or modify an administrative decision without remanding the case for further proceedings." *Harman v.*

*Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit has set forth a three-part test for determining whether to remand a case for further proceedings or for the immediate award of benefits. The immediate payment of benefits is appropriate where: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) no outstanding issues remain for the ALJ to resolve; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

As discussed above, the ALJ erroneously concluded that Mr. Brooks did not satisfy the requirements of listing 12.05C. Although the Commissioner urges the Court to remand for further proceedings, he does not specify what further proceedings are required. *See* Def.'s Resp. at 10. Further, it is clear from the record that Mr. Brooks must be found disabled at step three because he meets the requirements of Listing 12.05C. Thus, additional proceedings are unnecessary to determine his entitlement to benefits and "would serve no useful purpose." *Lester*, 81 F.2d at 834. Accordingly, the Court concludes that the proper remedy is a remand for the payment of benefits. Mr. Brooks' other assignments of error are not addressed as moot.

## IV.    CONCLUSION

For the reasons stated above, the Commissioner's decision that Mr. Brooks is not disabled is REVERSED and this case is REMANDED for the immediate calculation and award of benefits.

DATED this 3rd day of October, 2012.


/s/ Michael H. Simon
Michael H. Simon
United States District Judge


OPINION AND ORDER, Page 18